UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> U.S. DEPARTMENT OF STATE, ) <br> ) <br> Defendant. ) <br> ) | Civil Case No. 16-885 |

## MEMORANDUM OPINION

Hillary Clinton's use of a private email server while she was Secretary of State has spawned a rash of Freedom of Information Act (FOIA) lawsuits, including this one. One of the lawsuits, *Leopold v. U.S. Department of State*, Civil Case No. 15-123 (Contreras, J.), led to the release of an email in which then-Secretary Clinton seemingly directed her deputy chief of staff Jake Sullivan to strip the headings from a classified document and send it over an unsecure fax machine.

This suit asks for emails about that email. When the Clinton–Sullivan exchange was released in 2016, it precipitated a firestorm of media and Congressional inquiries. Those inquiries themselves prompted a flurry of documents between State Department officials planning and executing a public response. At a daily briefing the day after its release, Department spokesperson John Kirby said, "We did do some forensics on [the Clinton–Sullivan email exchange] and found no evidence it was actually emailed to her." A few months later, Judicial Watch filed this lawsuit to enforce its FOIA requests for records relating to the Clinton–Sullivan exchange and for the factual basis of Kirby's statement.

Long after the spotlight moved to fresher intrigue, lawyers remain. The dispute has narrowed to nineteen documents that show State Department officials in the throes of responding to inquiries about the email. State seeks to partially withhold these documents under FOIA's Exemption 5, which incorporates the attorney–client and deliberative process privileges. At least, Judicial Watch argues State applied the privileges too broadly. At most, Judicial Watch contends the deliberative process privilege should not apply at all, arguing it cannot shield government misconduct. On July 24, 2018, the Court ordered [27] State to provide unredacted copies of the documents for review *ex parte* to determine whether State properly invoked the privileges.

Based on its review, the Court agrees with State in part and disagrees in part. After reviewing the relevant legal standards, this opinion summarizes each document and applies the appropriate rule. The opinion concludes by granting Judicial Watch's cross-motion for summary judgment [18] for ten documents,[1] granting State's cross-motion for summary judgment [17] for the remaining nine,[2] and denying the balance of both motions.

## I. Legal Standards

### A. Exemption 5

FOIA provides a judicially enforceable right of access to federal agency records, unless the records are protected from disclosure by one of nine exemptions or three special law

---

[1] Documents C06087904, C06188346, C06188914, C06188916, C06188917, C06188578, C06087884, C06092906, C06092986, and C06087907.

[2] Documents C06071863, C06071864, C06093072, C06093081, C06093083, C06093040, C06188203, C06188506, and C06071850.

enforcement exclusions. *See* 5 U.S.C. § 552. Exemption 5, § 552(b)(5), allows government agencies to withhold documents "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). According to the D.C. Circuit, Exemption 5 "unequivocally" incorporates "all civil discovery rules," including the attorney–client and deliberative process privileges. *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181, 1185 (D.C. Cir. 1987). When an agency seeks to invoke a privilege, it must present sufficient facts—either in its *Vaughn* index or, during *ex parte* review, on the document's face—establishing the privilege applies. *See Bartholdi Cable Co. v. F.C.C.*, 114 F.3d 274, 280 (D.C. Cir. 1997). And where application of a privilege is unclear, it "must 'be construed as narrowly as consistent with efficient Government operation.'" *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773-74 (D.C. Cir. 1988) (en banc)).

### 1. Attorney–Client Privilege

The attorney–client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). In government agencies, an attorney–client relationship is inferred when the agency "deal[s] with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

## 2. Deliberative Process Privilege

The deliberative process privilege promotes and protects candor in governmental decisionmaking. *Mapother*, 3 F.3d at 1537. It allows agencies to withhold communications that are both predecisional and deliberative. *Id.*

Communication is predecisional when "antecedent to the adoption of an agency policy." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation marks omitted) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc)). Whether a communication is antecedent turns on the role it plays in the decisionmaking process. For instance, a recommendation from someone lacking legal or practical authority is predecisional since the final decisionmaker can decline to adopt it. *See Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991). Relatedly, an ex post communication by a subordinate explaining a superior's prior decision may still be predecisional if it discusses recommendations not expressly adopted. *See Sears*, 421 U.S. at 151-53.

Communication is deliberative when it reflects the "give-and-take" of decisionmaking. *Coastal States*, 617 F.2d at 866. This means the privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents" conveying the author's judgment. *Id.*

Though the Court of Appeals has never addressed applying the deliberative process privilege to public-relations issues, numerous district court opinions hold deliberations over "how to respond to media inquiries" are protected when "generated as part of a continuous process of agency decision making." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208-09 (D.D.C. 2010).

4

Talking points have been characterized as "inescapabl[y]" part of that process, since by their nature they are "rarely the final decision about what the [speaker] will say":

> [A speaker] may elect to use all, some, or none of the talking points.... And even when [speakers] do follow their talking points, they often do not recite the points word-for-word.... The final decision [i]s what [the speaker] actually said to the media, which is, of course, already a matter of public record.... A government employee drafting talking points ... needs to know that her advice will remain privileged regardless of whether the [speaker] ultimately sticks to the script or decides to extemporize. It is accordingly of no moment [whether the speaker] ultimately "stuck to the talking points"—the point is that she might not have.... Moreover, sticking to talking points often does not entail a verbatim recitation, leaving open the possibility that "a simple comparison" of the talking points with the official's public remarks would reveal the agency's deliberations.

*Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, No. 16-2188, 2018 WL 4283561, at *6-8 (D.D.C. Sept. 7, 2018) (quoting *Mapother*, 3. F.3d at 1538).

But this discussion proves too much. Extending it to its logical limits means any prepared remarks—even the State of the Union—could be withheld under the deliberative process privilege, since a speaker could always go off-script, extemporally exposing the final stage of a deliberative process. And although no one needs FOIA to obtain the State of the Union (numerous videos and transcripts are available), government officials give hundreds of speeches every day, all of which are important, though many elude recording or transcription. So stretching the deliberative process privilege would put many important public statements outside FOIA's grasp, even well after the statements were made.

The talking points considered by the *American Center for Law & Justice* court further distinguish its result. Those talking points were not ordinary talking points prepared for an ordinary spokesperson in an ordinary press briefing. The talking points were drafted by Department of Justice aides for use by then-Attorney General Loretta Lynch in press appearances to defend her widely panned tarmac meeting with former-President Bill Clinton during the 2016 presidential campaign. Because the talking points were prepared by a subordinate staffer, General Lynch could override them at any point, a fact the opinion recognized. *Id.* Put another way, the talking points at issue were effectively "advice from subordinates," not the final word on the Department's public position. *Id.* The opinion acknowledged an alternate style of talking points—those "represent[ing] the agency's [final] decision about what to say"—might induce a different result. *Id.*

Other cases echo that limitation by emphasizing that the deliberative process privilege applies to "records *preced[ing]* the finalization of the [agency]'s media response" reflecting the "give-and-take" leading to a consensus on the agency's public position. *Cause of Action v. IRS*, 125 F. Supp. 3d 145, 160 (D.D.C. 2015) (emphasis added); *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (holding the deliberative process privilege properly protected talking points "prepared by [agency] employees for the consideration of [agency] decision-makers"). And not least, this treatment comports with the Court of Appeals's command to construe Exemption 5 privileges as narrowly as possible. *See Mapother*, 3 F.3d at 1537.

### i. The Government Conduct Exception to the Deliberative Process Privilege

"[W]here there is reason to believe" documents withheld under the deliberative process privilege "may shed light on government misconduct," courts can decline to recognize the privilege, since "shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)).

This exception is well established in civil discovery. *See, e.g., Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998). The Court of Appeals, however, has never decided whether the exception abrogates the privilege in FOIA litigation, and lower courts have divided. *Compare, e.g., Judicial Watch, Inc. v. U.S. Dep't of State*, 241 F. Supp. 3d 174, 182-83 (D.D.C. 2017) (Berman Jackson, J.) (holding the government conduct exception does not apply to FOIA cases), *with, e.g., Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 66 (D.D.C. 2012) (Boasberg, J.) (suggesting the government conduct exception applies to FOIA cases).

## II. Application

After further review, the Court concludes State's withholdings were proper for nine documents[3] but improper for ten documents.[4] The Court further concludes that, even if the government conduct exception applies to FOIA litigation, it does not override proper application

---

[3] *See* documents cited *supra* note 2.

[4] *See* documents cited *supra* note 1.

of the deliberative process privilege here, since these documents were a byproduct of State's compliance with a judicial order.

## A. Document Summaries

In this Section, the Court summarizes each document as arranged by State's *Vaughn* index (ECF No. 17-1, at 7-10) and assesses the claimed privileges' applicability. The Court concludes State properly invoked Exemption 5 for all documents discussed in subsections II.A.1, .3, .5, and .8; and for some documents discussed in II.A.6; but not for documents discussed in II.A.2, .4, and .7.

### 1. "Nonpaper Response Suitable for Corker Burr and Grassley"

The first five documents[5] are emails circulating and critiquing a draft letter responding to Congressional inquiries into the Clinton–Sullivan email exchange.

State seeks to withhold the emails' substance under both the attorney–client and deliberative process privileges. Its argument applying the attorney–client privilege relies on the *Vaughn* index's bald assertion that the recipients "includ[ed] Department attorneys." State skates over who they are, as do the emails themselves. Nothing about the documents appears to dispense legal advice or further an existing attorney–client relationship. But regardless of whether the attorney–client privilege should apply, soliciting revisions and feedback on a draft is plainly predecisional and deliberative. Moreover, no proposed withholdings are further segregable. State may properly withhold the proposed portions under the deliberative process privilege.

---

[5] C06071863, C06071864, C06093072, C06093081, and C06093083.

8

### 2. "Planning to read out nonpaper email to Grassley staff today"

The next two documents[6] are February 2016 emails discussing State's prior public comments on the Clinton–Sullivan email exchange. Claiming the deliberative process privilege, State seeks to redact information styled as "press guidance from January 11th for podium"—the talking points used by a spokesperson during a press conference the month before. The email author notes she is "not sure what ended up being deployed."

The proposed withholdings are neither predecisional nor deliberative; the deliberative process privilege is inapplicable. For one, the emails share the talking points after they were used. They do not share previous versions of the talking points, created in the process of deciding what a spokesperson will say at some future press conference. If they did, the privilege would undoubtedly apply. But rather, the author includes the talking points as an "FYI," apparently to keep recipients apprised of the final public position State authorized a month earlier.

Nor do the proposed withholdings involve any deliberation. There is no give-and-take; no one seeks or provides feedback; the talking points were not prepared for use by a superior official with authority to depart from their content. The emails mechanically reproduce—without any analysis—finalized talking points that were already used. If State had copied-and-pasted a transcript of the press conference into the email, their claim for the deliberative process privilege would plainly fail. And here, State has done the functional equivalent, effectively copying-and-pasting their side of the script from the press conference. The privilege is equally unavailable.

---

[6] C06087904 and C06188346.

Discussing how to respond to a current or future press inquiry is different from conveying the final result of an earlier discussion about how to respond to a past inquiry. These documents are the latter. But unfortunately for State, the deliberative process privilege protects only the former. Even more because, unlike in *American Center for Law & Justice*, this press guidance was not a suggestion from a subordinate employee about what a superior should say. These talking points represent the final, settled "party line." State misapplied the deliberative process privilege.

### 3. "For response soonest: Politico story re Jake Sullivan and 'Top Secret' emails"

The next document[7] is an email chain beginning when *Politico* reporter Rachael Bade notified State about an upcoming story on Jake Sullivan's role in Clinton's email scandal and to request "any off the record . . . guidance." Bade's message circulated throughout State's communications team, resulting in emails drafting, tweaking, and approving a quote that would ultimately be attributed to "a State Department official." Rachael Bade, *Top Clinton adviser sent 'top secret' messages to her private account*, Politico (Feb. 10, 2016, 4:00 PM), https://www.politico.com/story/2016/02/hillary-clinton-email-jake-sullivan-secret-219013.

State seeks to withhold almost all substantive conduct under both the attorney–client and deliberative process privileges. Yet again, besides the *Vaughn* index's boilerplate assertion that the email chain "includ[es] an attorney's opinion," State elides how the attorney–client privilege applies. Regardless, the emails reflect the give-and-take of a continuous decisionmaking process.

---

[7] C06093040.

And no proposed redaction is further segregable. Accordingly, State properly invoked the deliberative process privilege for the proposed withholdings.

### 4. "POINTS"

The next three documents[8] are emails from January 8, 2016. The first, from staffer Lauren Hickey, shares press guidance in response to State's January 7 email release including the Clinton–Sullivan exchange. The other two emails are responses—"Thanks" and "Thanks Lauren"—with Hickey's original message visible below. In all three, State attempts to redact the press guidance, claiming the attorney–client and deliberative process privileges.

State misplaces both. For one, though it bears the burden of showing the attorney–client privilege applies, State merely asserts the email chain "includ[es] Department attorneys" without saying who and without explaining how the documents further an attorney–client relationship.

What is more, the documents are neither predecisional nor deliberative. The talking points are final versions—not drafts—that seem to have been authorized and released before the email was sent. Like the talking points discussed in subsection II.A.2, this proposed withholding is seemingly provided as an "FYI," and the arguments rejecting the deliberative process privilege in that subsection apply here with equal force. State cannot use Exemption 5 to shield this press guidance.

---

[8] C06188914, C06188916, and C06188917.

### 5. "Press points for Clinton email release"

In the next document,[9] a State press aide sends a White House official already-released press guidance and summarizes additional press guidance to follow the next day. State seeks to withhold the summary of the next day's press guidance as part of a deliberative process. But the proposed withholding appears neither predecisional nor deliberative. It does not ask for the White House's approval or feedback, nor does it contain precatory or suggestive language. It relays not a tentative plan but an already settled strategy. Since the documents do not appear to be predecisional or part of a give-and-take, State's attempt to characterize the proposed withholding as part of a deliberative process misses the mark. The privilege does not apply.

### 6. January 2016 Talking Points

The next five documents[10] are confusing. State describes them as "draft press guidance for responding to press inquiries," and seeks to withhold portions of all under the deliberative process privilege. Two documents relate to the Clinton–Sullivan email exchange[11]; the other three relate to State's January 2016 email release.[12]

---

[9] C06188578.

[10] C06087884, C06092906, C06092986, C06188203, and C06188506.

[11] C06087884 and C06188506.

[12] C06092906, C06092986, and C06188203.

Judging by the face of the documents, one related to the Clinton–Sullivan email exchange is obviously a draft,[13] as is one relating to the January 2016 release.[14] State properly applied the deliberative process privilege to these two documents.[15]

For the other three documents,[16] all multiple pages long, State attempts to redact only the first page under the deliberative process privilege. The remaining pages are unredacted but include a "Page Denied" watermark. Two documents appear to be identical.[17] But except for the watermark, nothing about the three (really two) documents obviously indicates they are unfinished. They read like prepared, bulleted talking points and canned answers to expected questions. And nothing in the *Vaughn* index provides further background or support for concluding the documents are predecisional or deliberative.

Absent any explanation of the role these documents played in a deliberative process, and mindful of the need to narrowly construe the Exemption 5 privileges, the Court concludes State fell short in establishing the deliberative process privilege should apply to the three not-obviously draft documents.[18]

---

[13] C06188506.

[14] C06188203.

[15] C06188506 and C06188203.

[16] C06087884, C06092906, and C06092986.

[17] C06092906 and C06092986.

[18] C06087884, C06092906, and C06092986.

13

### 7. "WP story"

The next document[19] is an email chain beginning when one aide forwards a *Washington Post* article about Hillary Clinton's use of a private email server while serving as Secretary. One person replies with a "point of interest," and the initial author responds.

State seeks to withhold the substance of the two replies under the deliberative process privilege. But that claim fails from the start, since neither communication appears to be predecisional. Neither email contemplates a future agency action; both seem to be off-hand reactions unconnected to any future agency action or goal. Nor is either email deliberative. There is no back-and-forth, and no sign of a continuous decisionmaking process. Since the emails are neither predecisional nor deliberative, the privilege falls short.

### 8. "possible to set up a quick call?"

This January 2016 email chain,[20] as described in the *Vaughn* index, "discuss[es] how the agency should respond to a Congressional inquiry and document request." Much of the email chain refers abstractly to information sent and received on the "high side," but State seeks to withhold what little substantive information does appear under the attorney–client and deliberative process privileges.

Unlike previous documents, one participant is identified as an attorney, and appears to be providing feedback in an attorney–client relationship. Though most of the chain merely arranges

---

[19] C06087907.

[20] C06071850.

an in-person meeting, the few details State seeks to withhold properly fall within the attorney–client privilege.

Additionally, the proposed withholdings concern requests for review and feedback. The redacted information thus appears to be both predecisional and deliberative, so the deliberative process privilege properly applies. Nor are any proposed withholdings further segregable. State can thus withhold the information under Exception 5.

### B. The Government Conduct Exception Does Not Apply.

As subsection I.A.2.i of this opinion notes, whether the government conduct exception can override the deliberative process privilege in a FOIA case is an open question. But resolving this case does not require an answer. It is enough to say the government conduct exception would not apply regardless.

At bottom, these documents show State Department officials suffering the slings and arrows of abiding by Judge Contreras's order to release thousands of pages of nonexempt work-related emails sent by Hillary Clinton from her private server while Secretary. Simply put, these documents shed light on government compliance—not misconduct. It would be very odd to characterize as misconduct documents created downstream from compliance with a judicial order, regardless of whether that order itself remedied prior misconduct.

### III. Conclusion

The Court grants Judicial Watch's cross-motion for summary judgment in part for documents C06087904, C06188346, C06188914, C06188916, C06188917, C06188578, C06087884, C06092906, C06092986, and C06087907, but denies the motion in all other respects. At the same time, the Court grants the State Department's cross-motion for summary

judgment in part for documents C06071863, C06071864, C06093072, C06093081, C06093083, C06093040, C06188203, C06188506, and C06071850, but denies it in all other respects.

A separate order shall issue on this date.

_____  
ROYCE C. LAMBERTH  
United States District Court

_10/1/18_____  
Date